Terrence A. Oved, Esq. (TAO 0418)
OVED & OVED LLP
110 Greene Street, Suite 1102
New York, NY 10012
212.226.2376

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------X
TOMER DAFNA,

                                     *Plaintiff*,

                  -against-

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

                                    *Defendant*.
------------------------------------------------------------------X

**Case No**:

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff, by its attorneys Oved & Oved LLP, complaining of the Defendant, upon information and belief, sets forth and alleges as follows:

## NATURE OF THE ACTION

       1.    Plaintiff brings this action against Defendant title insurance company for failure to provide Plaintiff with a defense in an underlying litigation in New Jersey state court as required by a title insurance policy issued by Defendant.  Plaintiff seeks reimbursement of the attorneys' fees, legal costs and expenses that Plaintiff was forced to incur in defending against, and ultimately obtaining dismissal of, said underlying action.  In addition, Plaintiff brings claims against Defendant for breach of contract under the Policy, bad faith, and the attorneys' fees and costs incurred in prosecuting the instant action (including a portion thereof which was litigated in New York state court).

2.      This action was initially commenced in the Supreme Court of the State of New York, New York County, Commercial Division, under Index No. 603085-2005, and assigned to the Honorable Bernard J. Fried.  On May 4, 2006, Justice Fried issued a Decision and Order holding that, "[i]n view of the availability of New Jersey as a forum in which plaintiff's claims may be litigated, and defendant having met its burden of establishing the inconvenience and unsuitability of New York as a forum for these claims, defendant's motion to dismiss based on forum *non conveniens* is granted on condition that defendant agrees to accept service of process in New Jersey and to appear in any action commenced in New Jersey for the same relief sought herein."  A copy of Justice Fried's May 4, 2006 Decision and Order is annexed hereto as **Exhibit A**.

## PARTIES

3.      Plaintiff Tomar Dafna is a natural person over the age of eighteen and is a resident of the State of New York.

4.      Defendant Old Republic Title Insurance Company is a Minnesota corporation in the business of insuring title to real property, issuing title insurance policies and providing related services.  At all relevant times, Defendant has maintained offices in New Jersey.

5.      The subject title insurance policy and the underlying New Jersey litigation both involve title to a parcel of real property located at 205-207 Union Street, Jersey City, New Jersey, 07305.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8.      In addition, as noted above in paragraph 2, Justice Fried of the New York State Supreme Court determined that, upon Defendant's motion, New Jersey is a proper forum for this action, and expressly conditioned granting Defendant's motion to dismiss on the ground of forum *non conveniens* in favor of New Jersey upon (i) Defendant's acceptance of service of process in New Jersey, and (ii) Defendant's appearance in any action commenced in New Jersey for the same relief.

## STATEMENT OF FACTS

9.      While this action was pending before the New York State Supreme Court, Plaintiff filed a motion for partial summary judgment.  In support of his motion for partial summary judgment, and pursuant to the applicable rules of procedure, Plaintiff filed a statement of undisputed material facts pursuant to Rule 19-a of the Rules of the Commercial Division, Supreme Court, New York County ("Rule 19-a").  Rule 19-a is analogous to Rule 56.1 of the Local Civil Rules of this Court in that both Rule 19-a and Local Civil Rule 56.1 provide that the facts alleged in a summary judgment movant's statement of material facts are deemed admitted unless opposed by the non-movant.

10.     Plaintiff's Rule 19-a statement was unopposed by Defendant.

11.     Accordingly, Justice Fried held in the May 4, 2006 Decision and Order that "[t]he facts alleged in plaintiff's [Rule 19-a] statement are deemed to be true."

12.     The facts set forth in the "Statement of Facts" section of the instant complaint (¶¶ 13-46, *infra*) are excerpted verbatim from Plaintiff's statement of undisputed material facts pursuant to Rule 19-a filed with Plaintiff's motion for partial summary judgment before the New

York State Supreme Court, and from the allegations set forth in Plaintiff's complaint in the New York action.

**The Subject Title Insurance Policy**

13.     In October 2004, Plaintiff Tomer Dafna ("Plaintiff" or "Mr. Dafna") purchased certain real property located at 205-207 Union Street, Jersey City, New Jersey, 07305 (the "Property") from U.S. Salvage Corp. and Faten Hassani (collectively, the "Sellers").

14.     In connection with his purchase of the Property, Mr. Dafna retained the Defendant Old Republic National Title Insurance Company ("Defendant" or the "Carrier") to insure title to the Property.

15.     The Carrier, through its agent, conducted title searches to verify that the Property was purportedly free and clear of all liens, encumbrances, clouds, defects, and other interests against the title of the Property.

16.     Those title searches picked up a prior contract for purchase of the Property between a company called Union Street Associates, L.L.C. ("Union Street") and the Sellers, dated April 7, 2003 (the "Prior Recorded Contract of Sale").

17.     In connection with Mr. Dafna's purchase of the Property, the Carrier issued a written "Commitment to Insure" title to the Property, which attached the title searches, including a copy of the Prior Recorded Contract of Sale, and indicated that the Carrier would cover Mr. Dafna against title defects arising from the Prior Recorded Contract of Sale.

18.     Thereafter, effective November 10, 2004 (the "Policy Date"), the Carrier issued a standard form ALTA title insurance policy (Policy No. SB 920994) (the "Policy"), insuring title to the Property in the amount of $330,000.  A copy of the Policy is annexed hereto as **Exhibit B**.

19.     The Policy was drafted entirely by the Carrier.

20.     The Policy "is valid and binding" on both parties.

21.     Consistent with the Carrier's written Commitment to Insure, the Policy provided coverage for title defects arising from the Prior Recorded Contract of Sale.  In fact, the Prior Recorded Contract of Sale was not listed on Schedule B, the Policy's list of exceptions to coverage.

22.     Specifically, the Policy lists over 14 categories of title risks (the "Covered Title Risks") that are expressly covered, "if they affect [Mr. Dafna's] title on the Policy Date," including:

- "Someone else owns an interest in [Mr. Dafna's] title."

- "Others have rights arising out of leases, contracts or options."

- "[Mr. Dafna's] title is unmarketable, which allows another person to refuse to perform a contract to purchase, to lease or to make a mortgage loan."

- "Other defects, liens, or encumbrances."

23.     In addition, under a separate Policy provision entitled "*Company's Duty to Defend Against Court Cases*," the Carrier had an express duty to defend Mr. Dafna in any lawsuit based on any of the foregoing Covered Title Risks, which provided as follows:

> "We will defend [Mr. Dafna's] title in any court case as to that part of the case that is based on a Covered Title Risk insured against by this Policy. We will pay the costs, attorney's fees, and expenses we incur in that defense."

(Policy, Endorsement, Page 2; *see also id.*, Page 1 ("We insure you against actual loss resulting from (i) any title risks covered by this Policy up to the Policy Amount, and (ii) any costs, attorneys' fees and expenses we have to pay under this Policy.").

24.     Moreover, a separate Policy section expressly provided for the "Continuation of Coverage" as follows:

> "This Policy protects you as long as you:

- own your title, or . . .
- are liable for any title warranties you make. . . ."

25.     Consistent with the foregoing provision, the cover page to the Policy expressly informed Mr. Dafna, in bold font, that:  "**You should keep the Policy even if you transfer title to your land.**"

26.     At all relevant times, Mr. Dafna fully performed all of his obligations under the Policy, including full payment of all premiums, and fully complied with all terms, conditions, and requirements thereof.

**Plaintiff's Purchase of the Property**

27.     On or about October 6, 2004, in reliance on the Carrier's title searches, Commitment to Insure, and issuance of the Policy, Mr. Dafna secured a mortgage with Cambridge Home Capital, LLC and purchased the Property from the Sellers for value.

28.     Mr. Dafna thereafter expended hundreds of thousands of dollars and significant time, effort and resources to develop, gentrify and improve the Property.

29.     In further reliance on the Carrier's issuance of the Policy, on January 25, 2005, Mr. Dafna sold the Property to YTY Holding Corp. ("YTY").

30.     As part of the sale of the Property to YTY, Mr. Dafna issued an Affidavit of Title to the Property, sworn to January 25, 2005, by which Mr. Dafna made title warranties concerning the Property.

31.     Specifically, in direct reliance on the Carrier's issuance of the Policy and reasonable expectation of coverage thereunder -- Mr. Dafna warranted in his Affidavit of Title that, as of the date of the conveyance of the Property to YTY:

- Mr. Dafna is "in sole possession of this property."

- Mr. Dafna has "owned this property since [purchasing it from Sellers],"

and "[s]ince then, no one has questioned [his] ownership or right to possession."

- "No other persons have legal rights in this property, except the rights of utility companies to use this property along the road or for the purpose of serving this property."

- "There are no pending lawsuits or judgments against [Mr. Dafna] or other legal obligations which may be enforced against this Property."

## The Underlying New Jersey Chancery Court Action

32.     In February 2005, Union Street commenced a lawsuit against Mr. Dafna (and others) in New Jersey Superior Court, Chancery Division, Hudson County, captioned *Union Street Associates, L.L.C. v. U.S. Salvage Corp., et al.*, Docket No. C-24-05, before the Honorable Thomas P. Olivieri (the "Covered Action").

33.     The Covered Action was premised solely on the Prior Recorded Contract of Sale, and alleged a cause of action against Mr. Dafna for specific performance of the Prior Recorded Contract of Sale.

34.     The initial complaint in the Covered Action alleged that Mr. Dafna was the current owner of the Property.

35.     Mr. Dafna timely notified the Carrier of the initial complaint in the Covered Action, and the Carrier declined to provide a defense.

36.     In May 2005, Union Street amended its complaint in the Covered Action and added certain additional defendants, including YTY.

37.     Mr. Dafna timely notified the Carrier of the amended complaint in the Covered Action, and the Carrier declined to provide a defense.

38.     The amended complaint in the Covered Action did not withdraw any claims against Mr. Dafna, but rather re-alleged the same claims from the initial complaint, including the cause of action for specific performance of the Prior Recorded Contract of Sale.

39.   In particular, the specific performance cause of action in the amended complaint in the Covered Action alleged the following:

- "[Union Street] has duly performed all the conditions and covenants specified in the [Prior Recorded Contract of Sale] that were to be performed by it as the Buyer and continues to be ready, willing and able to perform under the Contract."

- "The [Prior Recorded Contract of Sale] obligates Seller to sell the Property to [Union Street]."

- "The [Prior Recorded Contract of Sale] is a recorded document . . . ."

- "Therefore, all parties, ***including but not limited to all Defendants [including Mr. Dafna]***, had actual and constructive knowledge of the existence of the Contract. . . ."

- "[Union Street] has demanded performance ***by the Defendants [including Mr. Dafna]***, and ***Defendants [including Mr. Dafna]*** refuse to perform their obligations under the Contract."

- "***Defendants [including Mr. Dafna]***, have not performed and have refused to fulfill the contractual obligations required to ***close title on the transfer of the property*** and to the information and belief of the Buyer, ***Defendants [including Mr. Dafna]***, have indicated performance of said obligations will not be effectuated."

- "Defendants [Sellers], YTY, Tuval ***and Tomer Dafna*** and [sic] ***have refuted their obligation to transfer title*** of the Property as is required by the terms of the recorded Contract."

- "Wherefore, [Union Street] demands judgment be entered against Defendants [Sellers], Tuval, YTY, Faten Hassani, ***Tomer Dafna***, [and others], as follows:

    o   That ***Defendants, [including Mr. Dafna,]*** be decreed to appear for and close with Plaintiff ***the transfer of title to the Property*** which forms the basis of the [Prior Recorded Contract of Sale]; to pay and satisfy all liens and judgments and to execute any and all Deeds, Affidavits of Title, Closing Statements, or other such documents as may be necessary ***to cause the transfer of title of the property to [Union Street]*** in accordance with the [Prior Recorded Contract of Sale] . . .;

8

   o  Ordering **Defendants, [_including Mr. Dafna_,]** to <u>convey</u>
<u>said Property to [Union Street]</u> for the consideration set
forth in the [Prior Recorded Contract of Sale]; . . . [and]

   o  Declaring any and all Mortgages and Security Agreements
and Assignments of Rents and any other liens or
encumbrances **given to Defendant Cambridge by**
**_Defendants Dafna_**, Tuval and YTY void and of no effect
and discharging same of record against the Property. . . ."
(emphasis added).

  40.  In other words, the amended complaint in the Covered Action alleged that Mr.

Dafna should continue to remain a defendant in the Covered Action, and a party to Union

Street's cause of action for specific performance, either because he owned the Property or

because he should be liable for title warranties he made in selling the Property to YTY.

  41.  The Covered Action constituted a Covered Title Risk under the Policy.

**Plaintiff's Timely Notice of Claim and**
**<u>Defendant's Improper Denial of Coverage</u>**

  42.  Mr. Dafna provided timely notice to the Carrier of his claims under the Policy in

connection with the Covered Action.

  43.  The Carrier denied coverage solely on the ground that Mr. Dafna no longer

owned title to the Property.

  44.  The Carrier also refused to tender a defense in the Covered Action on the same

ground.

  45.  Mr. Dafna was forced to retain his own counsel to defend the Covered Action.

  46.  On September 19, 2005, after significant motion practice, depositions, and

discovery in the Covered Action, Mr. Dafna obtained a dismissal from the New Jersey Chancery

Court of Union Street's entire complaint in the Covered Action against Mr. Dafna on a pre-

answer motion to dismiss.

**The New York State Supreme Court Portion of This Action**

47. On August 19, 2005, Mr. Dafna filed this action against the Carrier in the Supreme Court of the State of New York, New York County, captioned *Dafna v. Old Republic Nat'l Title Co*., Index No. 603085-2005 (Fried, J.), seeking a declaration of coverage and the Carrier's duty to defend under the Policy, reimbursement of attorneys' fees, legal costs and expenses incurred by Mr. Dafna in defending the Covered Action, as well as asserting claims for breach of contract under the Policy, bad faith, and the legal costs incurred in prosecuting the New York action.

48. Approximately one month later, as noted above in paragraph 46, after extensive motion practice, depositions, and discovery in the Covered Action, Mr. Dafna obtained a dismissal from the New Jersey Chancery Court of Union Street's entire complaint in the Covered Action as against Mr. Dafna.

49. On November 1, 2005, Mr. Dafna filed a motion for partial summary judgment in connection with his complaint filed in New York State Supreme Court seeking a declaration of the Carrier's duty to defend under the Policy and reimbursement of the attorneys' fees and defense costs Plaintiff incurred in defending against, and obtaining dismissal of, the Covered Action.

50. In support of his motion for partial summary judgment, Mr. Dafna filed a statement of material facts pursuant to Rule 19-a, which is analogous to Rule 56.1 of the Local Civil Rules of this Court. Paragraphs 13 through 46 of the instant complaint set forth immediately above were excerpted verbatim from Mr. Dafna's unopposed Rule 19-a statement, as well as from Mr. Dafna's complaint in the New York action.

51. The Carrier cross-moved for summary judgment for a declaration that there was

no coverage under the Policy and to dismiss the complaint on the ground of forum *non conveniens*.

52.     In addition to failing to oppose Mr. Dafna's Rule 19-a statement, the Carrier repeatedly "adopted" the facts alleged in Mr. Dafna's complaint filed in New York State Supreme Court.  *See, e.g.,* Brief in Support of Carrier's Cross-Motion and in Opposition to Plaintiff's Motion for Partial Summary Judgment, at p. 6 ("The facts leading to the cause of action alleged in the Complaint are basically set forth in plaintiff's Complaint which, for the most part, this defendant adopts.").

53.     On May 4, 2006, Justice Fried of the New York Supreme State Court issued a Decision and Order holding that (1) "[t]he facts alleged in plaintiff's [Rule 19-a] statement are deemed to be true" and (2) "defendant's motion to dismiss based on forum *non conveniens* is granted on condition that defendant agrees to accept service of process in New Jersey and to appear in any action commenced in New Jersey for the same relief sought herein."

54.     Consistent with Justice Fried's May 4, 2006 Decision and Order, Plaintiff sets forth herein the following causes of action which seek "the same relief sought" before Justice Fried in the New York State Supreme Court under Index No. 603085-2005.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment that Defendant Had a Duty to Defend Under the Policy and Directing Defendant to Reimburse Plaintiff for Legal Fees Incurred in the Covered Action)**

55.     Plaintiff restates and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as if fully set forth herein.

56.     Plaintiff is the beneficiary under a valid and enforceable title insurance Policy issued by Defendant.

57.     Specifically, the Policy provides coverage "for the following title risks, if they

affect [Plaintiff's] title on the Policy Date":

- "Someone else owns an interest in [Plaintiff's] title";

- "Others have rights arising out of leases, contracts or options";

- "[Plaintiff's] title is unmarketable . . . "; and

- "Other defects, liens, or encumbrances."

58.     The Policy further provided that the Carrier had an express duty to defend Mr.

Dafna in any lawsuit based on any of the foregoing Covered Title Risks, as follows:

> "We will defend [Mr. Dafna's] title in any court case as to that part of the case that is based on a Covered Title Risk insured against by this Policy.  We will pay the costs, attorney's fees, and expenses we incur in that defense."

59.     Moreover, a separate Policy section expressly provides for the "Continuation of

Coverage" as follows:

> "This Policy protects you as long as you:
> - own your title, or . . .
> - are liable for any title warranties you make. . . ."

60.     A lawsuit (the Covered Action) concerning title to the Property was commenced

against Plaintiff.

61.     The Covered Action constituted and alleged one or more Covered Title Risks

under the Policy that affected Plaintiff's title to the Property on the Policy Date, and which, at a

minimum, invoked the Carrier's duty to defend under the Policy.

62.     The pleadings in the Covered Action also alleged that Mr. Dafna was the current

owner of title to the Property and therefore contained allegations that triggered the "continuing

coverage" protection under the Policy.

63.     In addition, in reliance on the Policy, Mr. Dafna gave title warranties concerning the Property in the conveyance to YTY which further triggered the "continuing coverage" protection under the Policy.

64.     The pleadings in the Covered Action alleged and/or sought to hold Mr. Dafna liable for the foregoing title warranties he made in reliance on the Policy.

65.     As such, the Covered Action alleged one or more causes of action against Mr. Dafna that, at the very least, potentially came within the coverage of the Policy, irrespective of whether, ultimately, there was coverage under the Policy, and, thus, the Carrier had an absolute duty to defend Mr. Dafna in the Covered Action under the Policy.

66.     The Covered Action constituted a judicial attack on Mr. Dafna's title to the Property, based upon the allegations in the pleadings and/or Mr. Dafna's title warranties, which obligated the Carrier to defend Mr. Dafna in the Covered Action.

67.     Plaintiff fully performed all of his obligations under the Policy, including payment of all premiums, timely notice of his claims under the Policy, and fully complied with all other terms, conditions, and requirements thereunder.

68.     Under the Policy, Defendant was obligated to defend Plaintiff in the Covered Action, and pay the attorneys' fees, legal costs and expenses incurred in such defense.

69.     In defending against, and ultimately obtaining dismissal of, the Covered Action, Plaintiff incurred significant attorneys' fees, costs and expenses exceeding $75,000.  Neither Plaintiff, nor his counsel, received any funds from Defendant, or from any other carrier, insurer or other third-party source in connection with defending the Covered Action.

70.     There is no valid or reasonable basis for the Carrier's refusal to tender a defense in the Covered Action under the Policy.

71.     An actual controversy exists between the parties as to whether the Carrier had a duty to defend the Covered Action under the Policy.

72.     Plaintiff has no adequate remedy at law for such harms and accordingly requires a remedy therefor in the form of declaratory relief.

73.     As a direct and proximate result of Defendant's refusal to tender a defense in the Covered Action, breaches of the Policy, and other misconduct, Plaintiff has been injured and has suffered injuries, harm and extensive monetary damages.

74.     As a result, Plaintiff respectfully requests that this Court enter a judgment against Defendant:

(i)      declaring that, under the Policy, Defendant had a duty to defend Plaintiff in the Covered Action (*Union Street Associates, L.L.C. v. U.S. Salvage Corp., et al.*, Docket No. C-24-05 (N.J. Sup. Ct., Ch. Div., Hudson Co.) (Olivieri, J.));

(ii)     directing Defendant to fully reimburse Plaintiff for the attorneys' fees, legal costs and expenses incurred by Plaintiff in defending against, and ultimately obtaining dismissal of, the Covered Action; and

(iii)    scheduling an inquest to have Plaintiff submit his attorneys' time records so that the Court can award Plaintiff's attorneys' fees, costs and expenses incurred in his defense of the Covered Action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

75.     Plaintiff restates and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as if fully set forth herein.

76.     A valid and binding insurance contract (the Policy) was entered into between Plaintiff and Defendant.

77.     Plaintiff gave Defendant valuable consideration in exchange for Defendant's issuance of the Policy.

78.   Specifically, the Policy provides coverage "for the following title risks, if they affect [Plaintiff's] title on the Policy Date":

- "Someone else owns an interest in [Plaintiff's] title";

- "Others have rights arising out of leases, contracts or options";

- "[Plaintiff's] title is unmarketable . . . "; and

- "Other defects, liens, or encumbrances."

79.   The Policy further provides that Defendant "will defend [Plaintiff's] title in any court case as to that part of the case that is based on a Covered Title Risk insured against by this Policy" and "will pay the costs, attorney's fees, and expenses we incur in that defense."

80.   Moreover, a separate Policy section expressly provides for the "Continuation of Coverage" as follows:

> "This Policy protects you as long as you:
> - own your title, or . . .
> - are liable for any title warranties you make. . . ."

81.   A lawsuit (the Covered Action) concerning title to the Property was commenced against Plaintiff.

82.   The Covered Action constituted and alleged one or more Covered Title Risks under the Policy that affected Plaintiff's title to the Property on the Policy Date, and which, at a minimum, invoked the Carrier's duty to defend under the Policy.

83.   The pleadings in the Covered Action alleged that Mr. Dafna was the current owner of the Property and therefore contained allegations that potentially came within the coverage of the Policy.

84.     In addition, in reliance on the Policy, Mr. Dafna gave title warranties concerning the Property in the conveyance to YTY which triggered the "continuing coverage" protection under the Policy.

85.     The pleadings in the Covered Action alleged and/or sought to hold Mr. Dafna liable for the foregoing title warranties he made in reliance on the Policy.

86.     Plaintiff fully performed all of his obligations under the Policy, including payment of all premiums, timely notice of his claims under the Policy, and fully complied with all other terms, conditions, and requirements thereunder.

87.     Defendant has breached and otherwise failed to perform its contractual obligations to Plaintiff under the Policy by failing to provide a defense in the Covered Action and refusing to reimburse Plaintiff for the attorneys' fees, legal costs and expenses he incurred in defending against, and obtaining dismissal of, the Covered Action.

88.     Defendant's failure to perform constitutes a breach of the parties' agreement under the Policy.

89.     As a direct and proximate result of Defendant's breaches of the Policy, Plaintiff has been injured and has suffered the following damages (a) by virtue of Defendant's willful failure to perform its obligations under the Policy, Plaintiff was forced to hire his own counsel and expend substantial money in defending the Covered Action, (b) Plaintiff has incurred attorneys' fees, legal costs and expenses in defending, and obtaining dismissal of, the Covered Action in excess of $75,000, and (c) neither Plaintiff, nor his counsel, received any funds from Defendant, or any carrier, insurer or other third-party source in connection with defending the Covered Action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Legal Fees Incurred in Prosecuting this Action,
### Including the Portion Litigated in New York)

90.     Plaintiff restates and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as if fully set forth herein.

91.     Due to Defendant's unwarranted and unlawful refusal to provide a defense in the Covered Action, Plaintiff was forced to commence the instant action -- initially in the Supreme Court of the State of New York, New York County, Commercial Division, under Index No. 603085-2005, and, thereafter, pursuant to Justice Fried's May 4, 2006 Decision and Order, in this Court, under the instant complaint.

92.     As a direct and proximate result of Defendant's breaches of the Policy, refusal to honor its duty to defend, and other improper conduct, Plaintiff has incurred substantial additional attorneys' fees, legal costs and expenses in prosecuting the instant action in order to redress and remedy the legal costs incurred by Plaintiff in defending against, and ultimately obtaining dismissal of, the Covered Action.

93.     The attorneys' fees and costs Plaintiff has incurred in prosecuting this action are above and beyond the legal fees and costs Plaintiff incurred in defending the Covered Action, and would not have been incurred but for Defendant's wrongful conduct and refusal to defend the Covered Action.

94.     At all relevant times, Defendant was aware of its obligations and duties under the Policy to proffer a defense in the Covered Action, and unnecessarily, improperly, and unlawfully failed to provide a defense in the Covered Action, or reimburse Plaintiff for any of the attorneys' fees, costs and expenses incurred in defending the Covered Action.

95.     Defendant's refusal to honor its contractual obligations to provide a defense in the Covered Action was without any reasonable, valid or debatable justification or basis.

96.     Neither Plaintiff, nor his counsel, received any funds from Defendant, or any carrier, insurer or other third-party source in connection with defending the Covered Action.

97.     Accordingly, Plaintiff is entitled to an award of monetary damages in an amount sufficient to redress, remedy and cover the substantial attorneys' fees, costs, and expenses he was forced to incur in prosecuting this action, including the portion of the action initially brought in the New York State Supreme Court under Index No. 603085-2005 before Justice Fried, as well as the costs and attorneys' fees that have been and will be incurred and expended going forward in prosecuting the instant action before this Court.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Bad Faith)

98.     Plaintiff restates and realleges the allegations contained in the preceding paragraphs and incorporates the same by reference as if fully set forth herein.

99.     At all relevant times, Defendant was fully aware of its contractual obligations, duties and responsibilities under the Policy to provide Plaintiff with a defense to the Covered Action, irrespective of whether there was ultimate coverage under the Policy for liability.

100.    Despite that knowledge, Defendant knowingly and willfully breached the Policy, and intentionally refused to tender a defense in the Covered Action, thereby substantially prejudicing Plaintiff and Plaintiff's ability to defend against the Covered Action.

101.    Defendant's refusal to honor its contractual obligations to provide a defense in the Covered Action was without any reasonable, valid or debatable justification or basis.

102.    In addition, Defendant acted with reckless indifference to Plaintiff's rights under the Policy, and knew or recklessly disregarded the lack of a reasonable basis for tendering a defense in the Covered Action.

103.    As a direct and proximate result of Defendant's bad faith and breach of its obligations to Plaintiff, Plaintiff has suffered extensive injuries, harms and monetary damages.

### JURY DEMAND

104.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands a judgment against Defendant as follows:

(a)    finding, adjudging and declaring that, under the Policy, Defendant had a duty to defend Plaintiff in the Covered Action (*Union Street Associates, L.L.C. v. U.S. Salvage Corp., et al.*, Docket No. C-24-05 (N.J. Sup. Ct., Ch. Div., Hudson Co.) (Olivieri, J.));

(b)    directing Defendant to fully reimburse Plaintiff for the attorneys' fees, legal costs, and expenses incurred by Plaintiff in defending against, and ultimately obtaining dismissal of, the Covered Action;

(c)    scheduling an inquest to have Plaintiff submit his attorneys' time records so that the Court can award Plaintiff's attorneys' fees, costs and expenses incurred in his defense of the Covered Action in an amount of not less than One Hundred Fifty Thousand Dollars ($150,000.00);

(d)    awarding Plaintiff compensatory damages in an amount to be determined at trial;

(e)    awarding Plaintiff punitive damages in an amount to be determined at trial;

(f)    awarding Plaintiff prejudgment interest and costs in accordance with applicable law;

(g)    awarding Plaintiff the attorneys' fees, legal costs and expenses he has incurred and will continue to incur and expend in prosecuting this action -- both in this Court and in the portion of this action prosecuted in the Supreme Court of the State of New York, New York County, under Index No. 603085-2005 (Fried, J.); and

(h)     granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
        July 28, 2006

By:     s/ Terrence A. Oved
        Terrence A. Oved, Esq. (TAO 0418)
        Thomas Freedman, Esq. (TF 1309)[1]
        **OVED & OVED LLP**
        *Attorneys for Plaintiff*
        110 Greene Street, Suite 1102
        New York, New York 10012
        Tel:  212.226.2376

---

[1]  Contemporaneously with this complaint, Plaintiff filed an application with this Court (which Defendant's counsel does not oppose) for Thomas Freedman to appear *pro hac vice* in this matter on behalf of Plaintiff.